UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DAWN Z., | ) |
| Plaintiff | ) ) ) |
| v. | ) 1:18-cv-00072-JCN ) |
| SOCIAL SECURITY ADMINISTRATION COMMISSIONER, | ) ) ) ) |
| Defendant | ) |

**MEMORANDUM OF DECISION
ON PLAINTIFF'S STATEMENT OF ERRORS**

On Plaintiff Dawn Z's application for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act, Defendant, the Social Security Administration Commissioner, awarded Plaintiff benefits, but only for a limited period of disability, based on a finding that Plaintiff experienced medical improvement. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, the Court vacates the administrative decision and remands the matter for further proceedings.[1]

**The Administrative Findings**

The Commissioner's final decision is the February 8, 2017, decision of the

---

[1] The parties consented to allow the undersigned to conduct any and all proceedings, and to enter final order and judgment in this matter. (Consent to a Magistrate Judge, ECF No. 18.)

Administrative Law Judge. (ALJ Decision, ECF No. 9-2.)[2] The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. §§ 404.1520, 416.920.

The ALJ found that Plaintiff has severe, but non-listing-level impairments consisting of social anxiety, depression, bipolar disorder, post-traumatic stress disorder, agoraphobia, panic disorder, chronic knee pain bilaterally, remote right knee replacement, and fibromyalgia. (R. 25 – 26.) For purposes of Plaintiff's appeal, the material residual functional capacity (RFC) findings included the findings that Plaintiff's impairments would render her off task for more than 15 percent of the workday, would have required that she have constant supervision, and would not have permitted her to tolerate typical work stressors, for the period beginning November 21, 2013, and ending June 30, 2016. (R. 28.) The ALJ also found that Plaintiff's functional capacity improved beginning July 1, 2016. (R. 35.) Specifically, the ALJ found that beginning July 1, 2016, Plaintiff was able to work independently, would be off task for only 10 percent of the workday (not including assigned breaks), and would be absent no more than one day every three months. (R. 35 – 36.) The ALJ found the changes in Plaintiff's RFC were material, and in reliance on a vocational expert's testimony, the ALJ determined that Plaintiff would be able to perform substantial gainful activity in specific representative jobs as of July 1, 2016. (R. 38.)

---

[2] Because the Appeals Council found no reason to review that decision (Notice of Appeals Council Action, R. 1), the Commissioner's final decision is the ALJ's decision.

## Standard of Review

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS,* 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## Discussion

Plaintiff argues the ALJ's decision to find her mental residual functional capacity materially improved as of July 1, 2016, is not supported by substantial evidence, primarily because it is unsupported by an expert medical opinion. (Statement of Errors at 3, 13 – 15.)

Defendant's regulations recognize that a period of disability may end based on "medical improvement."

> Medical improvement is any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs, and/or laboratory findings associated with your impairment(s).

3

20 C.F.R. § 404.1594(b)(1). For medical improvement to be material to a disability claim, the decrease in medical severity must increase the individual's ability to perform work activity. *Id.* § 404.1594(a).

A review of the ALJ's decision reflects that the ALJ modified her findings regarding Plaintiff's RFC based on her review and interpretation of entries made in Plaintiff's mental health treatment records beginning in 2016. Based on this review, the ALJ found a significant improvement in Plaintiff's ability to remain on task during the typical workday, that Plaintiff no longer required constant supervision, and that Plaintiff had the ability to manage ordinary work stressors.

In support of her conclusion that Plaintiff's period of disability ended as of July 1, the ALJ relied on certain entries in the medical records. The ALJ evidently did not rely on an expert opinion to support her conclusion. Instead, the ALJ based her finding of medical improvement on evidence that Plaintiff obtained a sense of wellbeing after starting a new relationship and moving to a farm, as reflected in mental health counseling notes generated as the result of her treatment with Melinda Morissette, PMHNP. (R. 32, 35, 36, discussing Ex. 10F.) The ALJ cited certain activities described in the medical records (e.g., a trip to Alaska and Plaintiff's anticipated ability to testify in a court hearing) as evidence of Plaintiff's improved condition.

An ALJ may render her own RFC findings in the absence of a supporting expert opinion, provided that the findings involve no more than "common-sense judgments about functional capacity based on medical findings." *Gordils v. Sec'y of HHS*, 921 F.2d 327, 329 (1st Cir. 1990). An ALJ, however, cannot make determinations that are within the

scope of matters entrusted to experts. *Nguyen*, 172 F.3d at 35. Here, in assessing Plaintiff's mental RFC before July 1, 2016, the ALJ relied upon expert opinions, yet when assessing Plaintiff's mental RFC as of July 1, she interpreted the medical evidence without the benefit of an expert opinion.[3] As the ALJ's reliance on expert opinion to determine Plaintiff's mental RFC before July 1 suggests, the matter is one that is ordinarily entrusted to experts. That is, given Plaintiff's medical history and the RFC finding prior to July 1, Plaintiff's contentment living on a farm, or her ability to travel to visit family,[4] cannot, without an expert opinion as to the relationship between the activities and Plaintiff's ability to work, support the conclusion that, in a work setting, Plaintiff does not require constant (or even significant) supervision to remain on task, can manage all typical work stressors when she previously could endure none, and would be off task no more than 10 percent of the workday instead of more than 15 percent of the time.[5] Under the circumstances, given the lack of expert opinion to support the ALJ's RFC assessment as of July 1, the ALJ's decision is not supported by substantial evidence on the record.

Defendant nevertheless contends that any error is harmless because Plaintiff cannot point to any expert medical opinion evidence to support a greater limitation than the ALJ

---

[3] The ALJ did not regard the views expressed by Ms. Morissette to be "medical opinion" because Ms. Morissette is a nurse practitioner, and gave Ms. Morissette's views only limited weight, including for the period of disability. (R. 32, 36 – 37.)

[4] Plaintiff places several qualifications on her ability to travel, which evidently was quite difficult for her. (Statement of Errors at 7 – 9.)

[5] The ALJ characterized the amount of improvement as "a just slightly higher level since July 2016." (R. 37.) Given some of the statements concerning Plaintiff's lack of capacity during her period of disability, the new RFC finding reflects more than a slight change in capacity.

5

assessed as of July 1, 2016. According to Defendant, if the ALJ erred, the ALJ erred in Plaintiff's favor by finding her disabled prior to July 1. (Response at 13 – 14, citing *Pressey v. Berryhill*, No. 2:16-cv-425-JDL, 2017 WL 2731308 (D. Me. June 25, 2017).) As noted in *Pressey*, "[t]he record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work." *Id.* at *2 (citing *Rosado v. Sec'y of HHS*, 807 F.2d 292, 294 (1st Cir. 1986)). However, any error in the ALJ's analysis can be harmless where a "finding is more favorable … than the evidence otherwise supports." *Id.* at *5 (citing *Bowden v. Colvin*, No. 1:13-cv-201-GZS, 2014 WL 1664961, at *4 (D. Me. Apr. 25, 2014)).

Defendant contends the ALJ's RFC finding prior to July 1 is not supportable because Plaintiff did not provide a source statement by a treating physician. According to Defendant, the only opinion evidence that supported Plaintiff's claim was the opinion of Ms. Morissette, a psychiatric mental health nurse practitioner, who, under Defendant's regulations, was not an "acceptable medical source," though she would be considered such a source for a claim filed on or after March 27, 2017.[6]

---

[6] Ms. Morissette provided a mental RFC assessment in November, 2016, in which she assessed that "on any given day" Plaintiff's PTSD could be "triggered" resulting in panic attacks and dissociative behavior, and predicting that Plaintiff would be absent from work more than four days per month due to the symptoms of her mental health conditions. (Ex. 9F, R. 566 – 67.) On February 8, 2017, the date of the ALJ's decision, Defendant's existing regulations and rules provided that certain medical practitioners, such as advance practice nurse practitioners, did not qualify as acceptable medical sources for purposes of any claim filed before March 27, 2017. The rules and regulations, however, provide that advance nurse practitioners are acceptable medical sources for purposes of claims filed on or after that date. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 F.R. 5844-01 (Jan. 18, 2017), *and compare* 20 C.F.R. §§ 404.1502, 404.1513, 404.1527(a)(2), (c)(2) (2016) (nurse practitioner not an acceptable medical source who can provide evidence to establish an impairment; medical opinions are limited to statements from acceptable medical sources; treating source rule applicable only if treating source is an acceptable medical source) *with* 20 C.F.R. §§ 404.1502(7), 404.1520c (2017) (acceptable medical source includes advance practice nurse; establishing factors for weighing medical opinion evidence that do not withhold evidentiary

Contrary to Defendant's contention, the ALJ's RFC assessment prior to July 1, 2016, is supported by the medical evidence, including the opinions of Jonathan Siegel, Ph.D., a consultative psychological examiner, who diagnosed (or concurred in the diagnosis of) post-traumatic stress disorder, panic disorder, and major depressive disorder. (Ex. 4F.) He also found that with her symptoms, Plaintiff would be impaired at work in terms of reliability and the ability to cope with typical work stressors. The ALJ gave great weight to Dr. Siegel's opinion. (R. 30.) The ALJ also gave great weight to the opinion of Dwayne Hogan, LCSW. (R. 31.) Mr. Hogan evaluated Plaintiff in August 2015, and determined that Plaintiff could not "perform required tasks, on a daily basis, in a workplace setting." (Ex. 7F, R. 527.) The ALJ's mental RFC determination for the period prior to July 1 is thus supported by opinions from mental health professionals, which opinions one could reasonably accept as adequate to support a finding. In other words, when the opinions are considered with all of the other evidence, the RFC determination for the relevant period prior to July 1, 2016, is supported by substantial evidence on the record.[7]

---

weight from opinions offered by advance practice nurses). Defendant argues that because the prior regulation applies, the ALJ's decision was more favorable to Plaintiff than the evidence would support and, therefore, remand is not appropriate. (Response at 8, citing Social Security Ruling 06-3p, and arguing the ALJ was free to discount the nurse practitioner's opinion.)

[7] By assigning great weight to the opinions of Dr. Siegel and LCSW Hogan, the ALJ recognized the substantiality of their opinions in relation to Plaintiff's mental RFC. Dr. Siegel's opinion qualifies as a "medical opinion" because he is an "acceptable medical source." 42 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). Although LCSW Hogan's opinion is not a "medical opinion" under this definition, "[d]epending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an acceptable medical source or from a nonmedical source may outweigh the medical opinion of an acceptable medical source …." *Id.* §§ 404.1527(f), 416.927(f). The opinions have substantial evidentiary weight for the reasons articulated by the ALJ. The ALJ cites no opinion of comparable weight for the period beginning July 1. Notably, the regulations provide that a consultative examination may be appropriate when "[t]here is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established."

Defendant's harmless error argument thus fails.

In short, because the ALJ's RFC assessment as of July 1, 2016, is not supported by any medical opinion or an opinion from another medical source, and because the issue of whether Plaintiff's mental health improved to a degree that would permit her to engage in work activity is not an issue on which the ALJ could reasonably make a "common-sense judgment[] about functional capacity based on medical findings," *Gordils*, 921 F.2d at 329, the ALJ's RFC assessment as of July 1, 2016, is not supported by substantial evidence on the record.

**Conclusion**

Based on the foregoing analysis, the Court vacates that portion of the administrative decision regarding the period commencing July 1, 2016, and remands the matter for further proceedings.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 31st day of October, 2018.

---

*Id.* §§ 404.1519a(b)(4), 416.919a(b)(4). *See also Shaw v. Sec'y of HHS*, 25 F.3d 1037, 1994 WL 251000, at *4 (1st Cir. 1994) (table) ("The regulations do not require a particular view of the evidence, but leave ambiguities and inconsistencies to be sifted and weighed by the ALJ, who may, as here, use a consultative examination to help resolve uncertainties.").